UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: PRINCESS BOLTON                                    CASE NO. 11-52339-KMS
                                                          CHAPTER 13

**PRINCESS BOLTON**                                       **PLAINTIFF**

**V.**                                                    **ADV. NO. 11-05051-KMS**

**QUICK CASH TITLE LOANS**                                **DEFENDANT**

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ORDER
REQUIRING TURNOVER OF PROPERTY OR ALTERNATIVELY FOR CONTEMPT
AND DENYING MOTION OF QUICKCASH TO ALLOW SALE OF COLLATERAL

This matter came on for hearing on November 17, 2011, (the "Hearing") on the Motion for Order Requiring Turnover of Property or Alternatively for Contempt (the "Complaint")[1] (Adv. Dkt. No. 1) filed by debtor Princess Bolton and the Answer to Complaint and Memorandum in Opposition to Motion for an Order Requiring Turnover of Property or Alternatively for Contempt and Motion of Quick Cash to Allow Sale of Collateral (Adv. Dkt. No. 6) filed by Creditor Quick Cash Title Loans. At the Hearing, John Anderson represented Princess Bolton ("Bolton") and David M. Ott appeared on behalf of Quick Cash Title Loans ("Quick Cash"). Counsel for both parties presented arguments. At the conclusion of the Hearing, the Court took the matter under advisement and ordered the attorneys to submit briefs on the relevant legal standards. In sum, the Adversary requires the Court to determine whether Bolton's vehicle is property of the estate, subject to turnover, and whether redemption is exercisable through her Chapter 13 plan. For the reasons set forth below, the Court finds that only Bolton's right of redemption is property of the estate; Bolton must redeem the vehicle by

---

[1] The Complaint in this adversary proceeding ("Adversary") was improperly identified by Princess Bolton as a "Motion."

1

paying the required amount in lump sum no later than January 30, 2012, for the vehicle to be subject to turnover.

## I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (E).

## II. FINDINGS OF FACT

On February 28, 2008, Princess Bolton ("Bolton") executed a Mississippi Title Pledge Agreement ("Agreement") in favor of Quick Cash Title Loans ("Quick Cash"), pledging her 2006 Nissan Maxima vehicle as collateral for a loan in the amount of $2,500.00.[2] (Adv. Dkt. No. 6, Ex. A). According to the Agreement, the loan would mature on March 29, 2008, with a total amount due of $3,125.00. *Id.* The Agreement further provided that if Bolton did not pay the amount due on or before the maturity date, Quick Cash "may take possession of the titled personal property to which the certificate of title relates" and if Bolton "did not redeem the pledged property within thirty days of the maturity date by paying all outstanding principal, interest, and other fees, then [Bolton] forfeits all right, title and interest in and to the titled personal property and the pledged property to [Quick Cash], who shall thereby acquire an absolute right of title and ownership to the titled personal property." *Id.* The Agreement also stated that the titled personal property is subject to sale at any time after repossession and a statutory, three-business day redemption period has expired, unless the property is deemed to be

---

[2] The parties do not dispute the applicability of the Mississippi Title Pledge Act, Miss. Code Ann. § 75-67-401 *et seq.* (2011).

salvage by the title pledge lender, in which case the property may be sold or otherwise disposed of immediately.[3] *Id.*

Bolton failed to make any payment on or before maturity on March 29, 2008. (Adv. Dkt. No. 6, Ex. C). On March 31, 2008, Bolton incurred a service charge of $562.50. *Id.* On April 1, 2008, Quick Cash granted an extension[4] and Bolton made a payment of $593.75. *Id.* On April 29, 2008, Quick Cash charged a service charge of $500.00 and granted a second extension, and Bolton made a second payment of $593.75. *Id.*

On May 1, 2008, Bolton filed a Chapter 13 bankruptcy case, which was dismissed on February 25, 2009.[5] *In re Bolton*, No. 08-50782-NPO (Bankr. S.D. Miss. Feb. 25, 2009) (Dkt. No. 1, 44). During the bankruptcy, Quick Cash received no payments; however, between May 28, 2008, and November 25, 2008, Bolton's account was charged a total of seven service charges.[6] (Adv. Dkt. No. 6, Ex. C).

On June 3, 2009, Bolton filed another Chapter 13 bankruptcy case, which was dismissed on September 27, 2011.[7] *In re Bolton*, No. 09-51131-KMS (Bankr. S.D. Miss. Sept. 27, 2011) (Dkt. No. 1, 75). During the bankruptcy, Bolton made three payments to Quick Cash: $36.50 on June 15, 2011; $85.07 on July 12, 2011; and $53.19 on September 13, 2011.

---

[3] The Agreement also contains a power of attorney authorizing Quick Cash to sell the vehicle.

[4] Miss. Code. Ann. § 75-67-413 states "[a]ll extensions or continuations of the title pledge transaction shall be in writing." There is no evidence of the extension other than the "Title Pledge" account summary. Bolton does not raise this as an issue.

[5] The case was dismissed for failure to keep plan payments current pursuant to an agreed order. (Dkt. No. 44).

[6] The last service charge appearing on Bolton's account, as of October 12, 2011, was incurred on November 25, 2008.

[7] The case was dismissed for failure to make payment into the Confirmed Plan and failure to respond to the Trustee's Motion to Dismiss.

3

On October 10, 2011, Quick Cash repossessed Bolton's vehicle.[8] (Adv. Dkt. No. 1; No. 6, Ex. C). On October 11, 2011, Bolton filed the pending Chapter 13 bankruptcy. *In re Bolton*, No. 11-52339-KMS (Bankr. S.D. Miss. filed Oct. 11, 2011) (Dkt. No. 1). On this same date, Bolton's counsel faxed notice to Quick Cash of the instant bankruptcy along with proof of insurance.[9] (Adv. Dkt. No. 1). On October 25, 2011, this Court entered an Order granting a continuation of the automatic stay. (Dkt. No. 22). On October 26, 2011, Bolton filed the instant Adversary seeking turnover of her vehicle and sanctions against Quick Cash.

### III. CONCLUSIONS OF LAW

At the outset, this Court notes that this issue is one of first impression in the Fifth Circuit and Mississippi. There is no reported case law interpreting the Mississippi Title Pledge Act, as amended in 2000, or binding case law interpreting 11 U.S.C. § 541(b)(8), regarding whether pledged property is property of the estate.

**A. Positions of the Parties**

Bolton contends that Quick Cash is listed on the Certificate of Title as lien holder[10] and has Power of Attorney to sell the vehicle after repossession, the same as a traditional lender, and that ownership does not pass until the Power of Attorney is utilized. Bolton further argues that, under the Agreement, Quick Cash could not exercise its Power of Attorney until three days after repossession; however, the instant bankruptcy was filed the day after repossession, within the three-day redemption period. In sum, Bolton contends that the vehicle is property of the estate

---

[8] Neither party disputes the lawfulness of the repossession.

[9] Quick Cash admits that Bolton requested return of the vehicle. (Adv. Dkt. No. 6 at 3).

[10] The Certificate of Title lists Bolton as the title holder and Quick Cash as first lien holder. (Adv. Dkt. No. 6, Ex. B).

because title remains in her name, the filing of bankruptcy extended the redemption period, and that she may redeem her vehicle through her Chapter 13 plan.

Quick Cash contends that turnover is not automatically required because: (1) the pledged property is not property of the estate under 11 U.S.C. § 541 and, thus, not subject to the automatic stay; (2) "at best, the bankruptcy estate has retained only a right to redeem the vehicle, (in exchange for payment in full pursuant to the contractual terms), rather than to compel turnover without payment;" and (3) alternatively, that Bolton is abusing the bankruptcy system and attempting to deprive Quick Cash of adequate protection. (Adv. Dkt. No. 6 at 3).

### B. Turnover

To warrant turnover under § 542, the repossessed property must be *property of the bankruptcy estate* and the debtor must demonstrate either that the repossessed property may be used, sold, or leased by the debtor, or that the debtor may exempt the property under § 522. (emphasis added). If the secured creditor repossesses the debtor's property prepetition, that property may be included in the estate. *Mitchell v. BankIllinois*, 316 B.R. 891, 895 (S.D. Tex. 2004) (*citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983)). However, § 542 may not apply if repossession of the property transferred ownership. *Id.*

### C. Right to Redeem is Property of the Estate

Section 541(a) of the Bankruptcy Code, made applicable by § 1306, provides:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests* of the debtor in property as of the commencement of the case.

5

11 U.S.C. § 541(a)(1) (emphasis added). The United States Supreme Court observed that Congress broadly defined property of the estate to include all tangible and intangible property interests of the debtor. *Whiting Pools, Inc.*, 462 U.S. at 204-05. Property of the estate includes all interests of the debtor, including property in which the debtor does not have the right of possession. *Id.* In determining the scope of property of the estate, the Court must look to property rights as defined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979).

The parties dispute the extent of Bolton's interest in the repossessed vehicle. Bolton contends that repossession did not change ownership; ownership would only change when Quick Cash utilized its Power of Attorney. (Adv. Dkt. No. 13). Quick Cash contends that the only interest Bolton has in the vehicle, and, thus, the only interest that "might be" property of the estate is the right of redemption.[11] (Adv. Dkt. No. 6 at 3, 7).

> The Mississippi Title Pledge Act provides in pertinent part:
>
> (1) A pledgor shall have no obligation to redeem pledged property or make any payment on a title pledge transaction. Upon the pledgor's failure to redeem the pledged property on or before the maturity date of the title pledge agreement or any extension or continuation thereof, the title pledge lender has the right to take possession of the titled personal property and to exercise a power of attorney to transfer title to the pledged property. In taking possession, the title pledge lender or his agent may proceed without judicial process if this can be done without breach of the peace; or, if necessary, may proceed by action to obtain judicial process.
>
> (2) If, within thirty (30) days after the maturity date, the pledgor redeems the pledged property by paying all outstanding principal, interest and other customary fees, the pledgor shall be given possession of the titled personal property and the pledged property without further charge.
>
> (3) If the pledgor fails to redeem the pledged property during the thirty-day period provided in subsection (2) of this section, then the pledgor shall thereby forfeit all

---

[11] Quick Cash alleges that redemption may only be exercised by payment in full in accordance with its contractual and statutory rights. *See infra.*

right, title and interest in and to the titled personal property[12] and the pledged property[13] to the title pledge lender who shall thereby acquire an absolute right of title and ownership to the titled personal property. The title pledge lender shall then have the sole right and authority to sell or dispose of the titled personal property.

(4) Notwithstanding anything in the preceding subsections of this section, the pledgor shall have three (3) business days after the title pledge lender has taken possession of the titled personal property to redeem the property by paying the amount of the unpaid principal balance, the delinquent service charge and the actual cost of the repossession. The cost of repossession shall include towing charges, storage charges paid to a third party and repairs made to the property to render it operable.

(5) If the property is sold after the three-business-day period, the title pledge lender shall return to the pledgor eighty-five percent (85%) of the amount received from the sale above the amount of the unpaid principal balance, the delinquent service charge, the actual cost of the repossession and a sales fee of One Hundred Dollars ($100.00). However, any titled personal property that is deemed to be salvage by the title pledge lender may be sold or otherwise disposed of immediately upon repossession.

(6) The title pledge transaction form shall contain a provision written in boldface type of at least fourteen (14) point size that notifies the pledgor that the titled personal property is subject to sale at any time after the three-business-day period has expired, unless the property is deemed to be salvage by the title pledge lender, in which case the property may be sold or otherwise disposed of immediately. The transaction form shall have a space located near that provision that the pledgor must initial.

Miss. Code Ann. § 75-67-411.

Pursuant to the Mississippi Title Pledge Act, upon Bolton's failure to redeem within thirty days after the loan maturity date, she forfeited all right, title, and interest in and to the vehicle and the Certificate of Title, and Quick Cash acquired absolute right of title and ownership to the vehicle. *See* Miss. Code. Ann. § 75-67-411(3). Bolton argues that she retains

---

[12] "Titled personal property" is defined as "any personal property the ownership of which is evidenced and delineated by a state-issued certificate of title." Miss. Code Ann. § 75-67-411(m).

[13] "Pledged property" is defined as "any personal property certificate of title that is deposited with a title pledge lender in the course of the title pledge lender's business and is the subject of a title pledge agreement." Miss. Code Ann. § 75-67-411(f).

7

ownership of the vehicle because the Certificate of Title remains in her name and that ownership does not change until Quick Cash exercises its Power of Attorney. However, this argument is contrary to the Mississippi Title Pledge Act provisions. Under the statute, while transfer of ownership and possession upon a pledgor's failure to redeem the pledged property on or *before* the maturity date requires an affirmative act of the title lender, such as exercising a power of attorney, failure to redeem within thirty days *after* the maturity date transfers ownership by operation of law. Miss. Code Ann. § 75-67-411(1), (3) (emphasis added). Because Bolton failed to redeem within thirty days after the maturity date, ownership transferred by operation of law, without need of a power of attorney.[14] Notwithstanding the cessation of Bolton's interest in the vehicle and Certificate of Title, the statute grants Bolton the right to redeem the property within three-business days of repossession "by paying the amount of the unpaid principal balance, the delinquent service charge and the actual cost of the repossession." *See* Miss. Code Ann. § 75-67-411(4).

In sum, although the statute grants absolute ownership to the title pledge lender upon the pledgor's failure to redeem within thirty days after maturity, it also grants the pledgor a right to redeem the property within three-business days of repossession. Thus, any potential ownership interest Bolton could gain in the vehicle arises only if she timely exercises her right to redeem within the statutory period. Should Bolton fail to redeem the vehicle within the requisite time period, she forfeits any potential right to an ownership interest.[15] *See Greenport Credit, LLC v.*

---

[14] Bolton's name appearing on the Certificate of Title is not indicative of ownership because transfer by operation of law is governed by Miss. Code Ann. § 63-21-35, which provides, among other things, that if the lienholder holds the vehicle for resale, he need not secure a new certificate of title but upon transfer to another person must deliver title to the transferee.

[15] It is important to note that even if Bolton fails to timely redeem and the vehicle is sold, she is still entitled to "eighty-five percent of the amount received above the amount of unpaid principal balance, the delinquent service charge, the actual costs of repossession and a sales fee of one hundred dollars. . . ." *see* Miss. Code Ann. § 75-67-411(5).

*Isom (In re Isom)*, 342 B.R. 743, 745-46 (Bankr. N.D. Miss. 2006) (debtor's right to redeem property sold at tax sale not exercised timely, thus, property not asset of estate).

In *In re Isom*, the Bankruptcy Court for the Northern District of Mississippi addressed a debtor's right to redeem property holding that "if a petition is filed while the redemption right is unexpired, the equitable right of redemption becomes part of the bankruptcy estate." 342 B.R. at 745 (internal citations omitted) ("The right to redeem property from a tax sale is an asset that becomes property of the estate. The real property involved in the sale is not itself an asset."). The mere existence of the debtor's ability to redeem the automobile does not render the vehicle property of the estate such that it should be turned over to the debtor pursuant to § 542. *Oglesby v. Title Max (In re Oglesby)*, No. 01-4072, 2001 WL 34047880, at *2 (Bankr. S.D. Ga. 2001) (*citing In re Lewis*, 137 F.3d 1280, 1285 (11th Cir. 1998). Thus, Bolton's unexpired right to redeem the vehicle, not the vehicle itself, is property of the estate and Quick Cash's refusal to turn over the vehicle was not a violation of the automatic stay.

Quick Cash argues that § 541(b)(8) specifically excludes the instant transaction from property of the estate. However, not all elements of this section are met.

Section 541(b)(8) provides:

> Property of the estate does not include –
>
> Subject to subchapter III of chapter 5,[16] any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where—
>
> (A) the tangible personal property is in the possession of the pledgee or transferee;

---

[16] This encompasses sections 541 to 562, exposing pledges of property to attack under various avoiding powers.

> (B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and
>
> (C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b).

11 U.S.C. § 541(b)(8).[17]

Section 541(b)(8) does not exclude Bishop's interest because, as of the date of filing the instant Complaint, Bishop's right to redeem had not expired. The applicability of § 541(b)(8) requires that the debtor and trustee fail to exercise any right to redeem under the contract or State law, in a timely manner as provided under State law *and* § 108(b). (emphasis added). Under the Mississippi Title Pledge Act, the pledgor has three business days after the title pledge lender takes possession of the vehicle to redeem the property by paying the amount of the unpaid principal balance, delinquent service charge and actual cost of repossession. Miss. Code Ann. § 75-67-411(4).[18] Section 108(b) of the Bankruptcy Code provides:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Thus, § 108(b) extends the redemption period, at a minimum, to sixty days after filing bankruptcy.

---

[17] Section 541(b)(8) was added to the Bankruptcy Code as part of the 2005 BAPCPA amendments.

[18] This sub-section was added to the current Mississippi Code by amendment in 2000.

Quick Cash repossessed Bolton's vehicle on October 10, 2011. Pursuant to Mississippi law, Bolton had three-business days from this date to redeem the vehicle; however, the next day, October 11, 2011, Bolton filed the instant Chapter 13 bankruptcy case. Because the statutory redemption period had not expired on the date of filing, § 108(b) extends the redemption period until sixty days[19] after the date of filing.[20] Thus, because all of the elements are not met, § 541(b)(8) does not operate to specifically exclude Bolton's interest from property of the estate.[21]

### D. Right to Redeem Requires Immediate Payment, Not Payment Through Plan

Quick Cash urges that Bishop must exercise her right to redeem by payment in full in accordance with the Agreement, not through her Chapter 13 plan, because unlike most secured creditors, its only remedy, pursuant to state law, is against the vehicle itself and the deterioration of the collateral puts its claim at risk. Bolton argues that payment under the plan is permissible pursuant to 11 U.S.C. § 1322(b)(2), (b)(5), which allow curing of default over the life of a plan.

If Bolton wishes to exercise her right of redemption, she must do so by immediate payment of the entire amount due within the statutory redemption period, as extended by § 108(b), not by payment through her Chapter 13 plan. Although § 1322(b)(2) and (3) permit modification of secured claim holders' rights to "provide for the curing or waiving of any default," allowing payments over the life of a plan would impermissibly create a property right that did not exist prepetition and effectively operate as a suspension of the redemption period.

---

[19] Sixty days from the date of filing ended on December 11, 2011. The Motion was under advisement on that date.

[20] It is important to note that the automatic stay does not toll the redemption period. Only § 108(b) extends the state law redemption period where the redemption period had not expired prior to filing bankruptcy. *In re Isom*, 342 B.R. at 745-46 (automatic stay does not toll the redemption period); *Cash Am.. Advance, Inc. v. Prado*, 413 B.R. 599, 605-06 (S.D. Tex. 2008) (adopting majority position that § 362 does not toll the redemption period; § 108(b) provides only extension for such period); *Cash Am. Pawn v. Muroh*, 209 B.R. 419, 422-23 (E.D. Tex. 1997).

[21]*Cf. In re Isom*, 342 B.R. at 46 (property sold at tax sale was not property of the estate where debtor failed to redeem property within the sixty day extension under § 108(b)); *In re Martin*, 418 B.R. 710 (Bankr. S.D. Ohio 2009) (debtor's vehicle not property of estate because he failed to redeem within 60 day extension under § 108(b)).

*See e.g. In re Hatman*, No. 309-05764, 2009 WL 2855771, at *2 (Bankr. M.D. Tenn. Sept. 1, 2009) (full redemption price for pawned items must be paid in full within sixty-day extension as provided in § 108(b)(2); redemption cannot be spread out over life of plan); *In re Oglesby*, 2001 WL 34047880, at *3; *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1284 (11th Cir. 1998). The automatic stay does not toll the redemption period. *In re Isom*, 342 B.R. at 745-46; *Cash Am. Advance, Inc. v. Prado*, 413 B.R. 599, 605-06 (S.D. Tex. 2008) (adopting majority view that § 362 does not toll the redemption period); *Cash Am. Pawn v. Muroh*, 209 B.R. 419, 422-23 (E.D. Tex. 1997). Allowing payment through the plan would effectively suspend the redemption period beyond the statutory time period, rendering §§ 541(b)(8) and 108(b) useless.

Furthermore, Bolton's reliance on § 1322(b)(5) is unfounded. Section 1322(b)(5) does not apply to debts, such as the instant title loan, already due and payable before filing a Chapter 13 bankruptcy case. *See Pierrotti v. IRS (In re Pierrotti)*, 645 F.3d 277, 279 (5th Cir. June 22, 2011) (*citing Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 244-45 (5th Cir. 1984) (en banc)).

In sum, Bolton's estate is comprised of her unexpired right to redeem, not the vehicle itself, exercisable by immediate payment in full in accordance with the Agreement no later than the statutory time period extended by § 108(b) and by this court to account for time in which this matter was under advisement. *See In re Hatman*, 2009 WL 2855771, at *2 (court extended the redemption period to account for days in which matter was under advisement). Accordingly, if Bolton redeems her vehicle by payment in full on or before January 30, 2012,[22] Quick Cash will

---

[22] Bishop filed her bankruptcy petition on October 11, 2011, so the due date for redemption was December 11, 2011. This matter was heard on November 17, 2011, and taken under advisement allowing the parties to submit briefs on the issue. Thus, the Court finds that the debtor should be allowed an additional 25 days from the date of this Opinion to redeem the property by paying Quick Cash in full.

12

be required to return possession to Bolton. If Bolton fails to redeem her vehicle by payment in full on or before January 30, 2012, she forfeits her right to redeem and any potential ownership interest in the vehicle, and Quick Cash will retain its absolute legal interest and ownership in the vehicle, subject to Miss. Code Ann. § 75-67-411(5), if applicable.

### E. Quick Cash's Request for Relief of the Automatic Stay

In accordance with the reasons set forth on the record at the Hearing, Quick Cash's request for relief from the automatic stay, contained in its Answer to Bolton's Complaint, is denied. To request relief from the stay, the moving party must follow the procedures set forth in Federal Rule of Bankruptcy Procedure 4001 and Miss. Bankr. L.R. 4001-1, including payment of a filing fee. Pursuant to Rule 9014, incorporated by Rule 4001, such motion is a contested matter subject to notice and service requirements of Rule 7004. Filing such a Motion combined in the Answer to a Complaint requesting turnover does not conform with said provisions. For the same reasons, Quick Cash's request for sale of collateral is denied.

Although the vehicle itself is not property of the estate, Quick Cash cannot sell, transfer, or otherwise dispose of the vehicle until and unless Bolton fails to exercise her right to redeem, no later than January 30, 2012.

## IV. CONCLUSION

The Court concludes that ownership of Bolton's vehicle transferred by operation of law such that only Bolton's right to redeem, not the vehicle itself, is included in property of the estate. Hence, the vehicle is not subject to turnover and Quick Cash did not violate the stay by refusing to return the vehicle to Bolton. The Court further finds that Bolton's right to redeem is exercisable only by payment in full on or before January 30, 2012, not through her Chapter 13 plan. Should Bolton fail to timely redeem, she will forfeit her right to redeem and any potential

interest in the vehicle, and Quick Cash will retain its absolute ownership interest in the vehicle, subject to Miss. Code Ann. § 75-67-411(5), if applicable. Accordingly, the Complaint should be, and is hereby denied in that the right to redeem has not been exercised.

Furthermore, Quick Cash's Motion to allow the sale of the vehicle is denied, as not properly filed in accordance with Rule 4001.

A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 7058.

**SO ORDERED.**

/s/ Katharine M. Samson

Katharine M. Samson
United States Bankruptcy Judge
Dated: January 5, 2012